FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y
★ JUL 25 2011 ★

BROOKLYN OFFICE

MILLER KORZENIK SOMMERS LLP
David S. Korzenik
Louise Sommers
488 Madison Avenue 11th Floor
New York, New York 10022-5702
(212) 752-9200
dkorzenik@mkslex.com
lsommers@mkslex.com
*Attorneys for The British Broadcasting Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

MARK I. SOKOLOW et al.,                                        :

                                             Plaintiffs,        :

                                                               :   **MISC 11   0547**

                      -against-                                :   ECF CASE

                                                               :

THE PALESTINIAN LIBERATION ORGANIZATION,  :   GARAUFIS, J.
et al,                                                         :   [04-Civ-00397 – Underlying
                                             Defendants.       :   action pending in the Southern
                                                               :   District of New York]

--------------------------------------------------------------------x

## MEMORANDUM OF LAW OF THE
## BRITISH BROADCASTING CORPORATION
## IN SUPPORT OF MOTION TO QUASH SUBPOENA

Miller Korzenik Sommers LLP
488 Madison Avenue, Suite 1120
New York, NY 10022
(212) 752-9200
dkorzenik@mkslex.com
lsommers@mkslex.com
*Attorneys for The British*
*Broadcasting Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 3

     THE BBC PROGRAM ................................................................................................. 3

     THE SUBPOENA ......................................................................................................... 4

     EFFECTS OF DISCLOSURE ....................................................................................... 5

     LOCATION OF POTENTIAL WITNESSES AND DOCUMENTS .......................... 5

     ATTEMPTS TO RESOLVE THE SUBPOENA
     WITHOUT MOTION PRACTICE ............................................................................. 6

ARGUMENT - THE SUBPOENA SHOULD BE QUASHED ........................................... 6

I.  THE SUBPOENA VIOLATES THE TERRITORIAL LIMITS OF RULE 45 ................ 6

II.  THE SUBPOENA IS UNDULY BURDENSOME,
    WARRANTING QUASHING OR TRANSFER ........................................................ 10

III.  THE SUBPOENA SEEKS PROTECTED PRIVILEGED INFORMATION .............. 12

     A.  Any BBC Outtakes Containing Confidential Information
        Are Absolutely Privileged From Disclosure
        Under New York's Shield Law ................................................................. 14

     B.  New York's Shield Law Protects the BBC's
        Non-Confidential Outtakes
        and Testimony From Disclosure ............................................................. 16

     C.  The First Amendment and Federal Law Protects
        the BBC's Unpublished Information From
        Disclosure ................................................................................................. 19

        Neither Federal Test Can Be Satisfied Here ......................................... 21

        Policy Considerations Also Outweigh Compulsion Here ...................... 22

IV.  THE SUBPOENAED INFORMATION CONTAINS INADMISSIBLE
     HEARSAY THAT SHOULD NOT BE COMPELLED ............................................. 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

Carter v. City of New York, No. 02 Civ. 8755, 2004 WL 193142, 2004 U.S. Dist. LEXIS 1308 (S.D.N.Y. Feb. 2, 2004) .................................................................................................. 19, 22

Cates v. LTV Aerospace Corp., 480 F. 2d 620 (5th Cir. 1973) .................................................... 7

Concerned Citizens v. Belle Haven Club, No. 3:99 Civ 1467, 2004 U.S. Dist. LEXIS 27335 (D. Conn. June 21, 2004) ...................................................................................................... 24

Davis v. Davis, 88 Misc.2d 1, 386 N.Y.S.2d 992 (Fam. Cit. Rensselaer Co.1976). ................... 15

Doe v. Cummings, No. 91-346, 1994 WL 315640, 22 Media L. Rep. [BNA] 1510 (Sup. Ct. St. Lawrence Co. Jan. 18, 1994) ................................................................................................ 17

Gonzales v. NBC, Inc., 194 F.3d 29 (2d Cir. 1999) ............................................................. passim

Flynn v. NYP Holdings Inc., 235 A.D.2d 907, 652 N.Y.S.2d 833 (3d Dept. 1997) ................... 17

Knight-Ridder Broadcasting, Inc. v. Greenberg, 70 N.Y.2d 151, 518 N.Y.S.2d 595, 511 N.E.2d 1116 (1987) ........................................................................................................... 15

Krase v. Graco Children Prods., Inc. (In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.), 79 F.3d 346 (2d Cir. 1996) .................................................................................. 17, 19-20

Ings v. Ferguson, 282 F.2d 149 (2d Cir.1960) ............................................................................ 9

In re Edelman, 295 F.3d 171 (2d Cir. 2002) ................................................................................ 7

In re Subpoena Duces Tecum to American Broadcasting Companies, Inc., 189 Misc.2d 805, 735 N.Y.S.2d 9191 (Sup. Ct. NY Co. 2001) ........................................................................... 16-17

Laker Airways Ltd. v. Pan Am. World Airways, 607 F. Supp. 324 (S.D.N.Y. 1985) ................. 9

Matter of Beach v. Shanley, 62 N.Y.2d 241, 476 N.Y.S.2d 765, 465 N.E.2d 304 (1984) .... 15, 18

McGraw-Hill, Inc. v Arizona (In re Petroleum Prods. Antitrust Litig.), 680 F.2d 5 (2d Cir. 1982) ...................................................................................................... 20

N.Y. Times Co. v. Gonzales, 459 F.3d 160, (2d Cir. 2006) ....................................................... 25

O'Neill v. Oakgrove Construction, Inc., 71 N.Y.2d 521, 523 N.E.2d 277, 528 N.Y.S.2d 1 (1988) ............................................................................................... 14-15, 18, 23

Persky v. Yeshiva Univ., No. 01 Civ. 5278, 2002 WL 31769704, 2002 U.S. Dist. LEXIS 23740
    (S.D.N.Y. Dec. 10, 2002) ................................................................................ 20

Price Waterhouse LLP v. First American Corp., 182 F.R.D. 56 (S.D.N.Y. 1998) ................... 7-9

Prosecutor v Brdjanin, Case No.: IT-99-36-AR73.9, Decision on Interlocutory Appeal (Dec. 11,
    2002)(International Criminal Tribunal for the Former Yugoslavia, The Hague) .................... 24

Sands v. News America Publishing Inc., 161 A.D.2d 30, 560 N.Y.S.2d 416 (1st Dep't 1990) .. 15

Sikelianos v. City of New York (In re Subpoena Directed to the AP), No. 05 Civ. 7673, 2008
    WL 2465120, 2008 U.S. Dist. LEXIS 47560 (S.D.N.Y. June 18, 2008) ............................. 20

Smithkline Beecham Corp. v. Synthon Pharm. Ltd, 210 F.R.D. 163 (M.D.N.C. 2002) ............ 11

Sokolow v. Palestine Liberation Org., No. 04 Civ. 00397 (GBD), 2011 WL 1345086, 2011
    LEXIS 36022 (S.D.N.Y. Mar. 30, 2011) ................................................................. 3

Stanford v. Kuwait Airlines Corp., No. 85 Civ. 0477, 1987 WL 26829, 1987 LEXIS 10981
    (S.D.N.Y. Nov. 25, 1987) ............................................................................... 7-9

Stanziale v Pepper Hamilton LLP, 2007 WL 473703, 2007 U.S. Dist. LEXIS
    (S.D.N.Y. Feb. 9 2007) ................................................................................ 10-11

St. Paul Fire & Marine Ins. Co. v Royal Ins. Co., No. 91 Civ. 6151 1993 WL 267347, 1993
    LEXIS 9415 (S.D.N.Y. July 12, 1993) ................................................................. 8

The Nissan Fire & Marine Ins. Co., Ltd v. Fortress Re, Inc., No. 1:02CV00054, 2002 WL
    1870084, 2002 U.S. Dist Lexis 14928 (S.D.N.Y.  Aug 14, 2002) ................................... 7

U.S. v. Grant, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176 (S.D.N.Y. Nov. 17, 2004) 19, 21-22

U.S. v. Harwood, 998 F.2d 91 (2d Cir. 1993) ........................................................... 24

U.S. v. Star Scientific, 205 F. Supp. 2d 482 (D. Md. 2002) ........................................ 12

von Bulow by Auersperg v. von Bulow, 811 F.2d 136 (2d Cir. 1987) ............................ 12, 20

## Statutes

N.Y. Civ Rts. L. §79-h .......................................................................... 12, 14, 16, 19

Fed. R. Civ. P. 1 ................................................................................... 10

Fed. R. Civ. P. 30(b)(6) ............................................................................. 7-8

Fed. R. Civ. P. 45 ................................................................................................................ passim

Fed. R. Civ. P. 45(b)(2) ....................................................................................................... 6

Fed. R. Civ. P. 45(c)(3) ....................................................................................................... 8

Fed. R. Civ. P. 45(c)(3)(A)(ii) ............................................................................................ 6

Fed. R. Civ. P. 45(c)(3)(A)(iii) ..................................................................................... 10, 12

Fed. R. Civ. P. 45(d)(2) ....................................................................................................... 7

Fed. R. Evid. 801(d)(2)(C) ................................................................................................. 24

Fed. R. Evid. 801(d)(2)(D) ............................................................................................ 24-25

## Other Authorities

Fed. R. Civ. P. 45, Advisory Committee Notes, 1991 Amendment ............................................. 10

**MEMORANDUM OF LAW OF THE BRITISH BROADCASTING CORPORATION
IN SUPPORT OF MOTION TO QUASH SUBPOENA**

**PRELIMINARY STATEMENT**

This memorandum of law is submitted on behalf of the British Broadcasting Corporation

("the BBC") in support of its motion to quash the Subpoena to Testify at a Deposition in a Civil

Action dated July 8, 2011 (the "Subpoena") issued on behalf of Plaintiffs in the underlying

action, pending in the Southern District of New York.  The Subpoena seeks a deposition witness

to testify with respect to a 2003 BBC news program entitled "Arafat Investigated" (the

"Program") and non-broadcast information related to that Program, and to appear with those

materials.

The BBC, headquartered in England, is a total stranger to the underlying litigation and

the acts on which it is based. Plaintiffs assert some thirteen federal and state claims in that action

against the Palestinian Liberation Organization ("PLO"), the Palestinian Authority ("PA"), and

John Doe defendants, seeking to recover for alleged injuries and death suffered by victims of

seven terrorist attacks in or near Jerusalem, Israel in 2001, 2002 and 2004. None of those acts are

the subject of the BBC Program, and one alleged attack postdated the broadcast.

The Subpoena should be quashed on numerous grounds.  First, there is no BBC witness

with knowledge of the subpoenaed issues, or responsive documents, in the United States.

Compliance with the Subpoena would require a BBC witness to travel more than 100 miles from

where the witness resides, is employed or regularly transacts business in person to testify and

produce documents controlled abroad.  As such, the Subpoena violates the territorial restrictions

of Fed. R. Civ. P. 45.

Second, noticing the deposition in and issuing the Subpoena out of this District – thus

mandating that this motion be made here – is unduly burdensome, runs afoul of Rule 45's

concern for protecting nonparties who appear by compulsion, and contravenes considerations of judicial economy.  Given that the underlying action –in which the same counsel is appearing for Plaintiffs – is pending in the Southern District of New York and the BBC was served in that district, mandating the involvement of the Eastern District in this Subpoena is an impermissible exercise in forum shopping.  The Southern District is the least burdensome, most efficient and cost-effective, and proper venue for resolving the Subpoena issues, as it is the court most familiar with the underlying case and thus the relevance and admissibility issues presently raised. The Subpoena should be quashed as unduly burdensome, or, alternatively, transferred to the Southern District for determination in the interests of justice and judicial economy.

Third, the testimony and unpublished documents sought by the Subpoena are protected from compelled disclosure by the privileges granted journalists' news gathering information. These protections are intended to guard against the unfettered access Plaintiffs seek to sift through non-broadcast BBC information in an attempt to find something, yet unidentified, to assist their federal and state causes of action.  At a minimum, as they have taken no discovery, other than jurisdictional discovery, from the Defendants in their own case, they will be unable to show – as they must – that they attempted to obtain the underlying information sought from alternate sources.

Fourth, the information sought in the BBC's non-broadcast information is, in any event, incompetent hearsay and inadmissible in the underlying case.

Accordingly, the Subpoena is invalid, improper and unduly burdensome, and seeks inadmissible and/or privileged information. The BBC's Motion to Quash should be granted. Alternatively, this matter should be transferred to the underlying action in the Southern District of New York.

## BACKGROUND

The BBC is a British public service broadcaster. Its independent news programs are among the many types of programming it provides. In 2003, the BBC broadcast the Program "Arafat Investigated," as part of its news mission to prepare and disseminate information of public concern. Declaration of Stephen Mitchell dated July 21, 2011 ("Mitchell Decl.") ¶1.

The BBC is a stranger to Plaintiffs' underlying litigation, pending in the Southern District of New York since 2004, between Plaintiffs and Defendants PLO and PA. In that underlying action, Plaintiffs seek to hold Defendants PLO and PA liable for injuries and death allegedly sustained during seven terrorist attacks that occurred in Jerusalem, Israel during 2001, 2002 and 2004. Declaration of Louise Sommers dated July 25, 2011 ("Sommers Decl.") ¶ 3 and Ex.A [Complaint] ¶¶126-222. "Plaintiffs assert causes of action for international terrorism...and various state law claims including wrongful death, pain and suffering, battery, assault, loss of consortium, negligence, and infliction of emotional distress." Sokolow v. Palestine Liberation Org., No. 04 Civ 00397 (GBD), 2011 WL 1345086, at *1, 2011 LEXIS 36022, at *5 (S.D.N.Y. Mar. 30, 2011).

Despite the extended pendency of the underlying litigation, merit discovery has only recently commenced and Plaintiffs have taken no merit discovery of Defendants PLO and PA. Discovery will not be concluded until December 2012. Sommers Decl. ¶4, Ex. B.

**The BBC Program**

The Program was broadcast on November 9, 2003. It was reported by a Middle East correspondent, and was focused on the isolation at that time of former Palestinian leader Yasir Arafat ("Arafat") by Israel and the U.S., and Arafat's status and relationship to the Palestinian people. There were a number of persons interviewed in that program, among them persons who identified themselves, for example, as various officials, academics, militants and/or residents of

the area. None of the alleged attacks in issue in the underlying case were subjects of, or

mentioned in, the BBC Program, and at least one such alleged attack postdated the 2003

Program.  Declaration of Itai Maytal dated July 25, 2011 ("Maytal Decl.") ¶¶4-5.

**The Subpoena**

By Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action dated

July 8, 2011 (the "Subpoena") served on the BBC in Manhattan, Plaintiffs noticed the deposition

of the BBC for July 26, 2011 and requested that the witness bring copies of the Program, as well

as unpublished

> authentic, complete and unedited audiovisual copies of all audiovisual recordings
> recorded during the preparation and making of the Program and/or for the purpose
> of preparing and making the Program, including  all such recordings which were
> not ultimately included in the Program as broadcast ["collectively, "Outtakes"].

Declaration of Nicola Cain ("Cain Decl.") ¶¶2, 3 and Ex. A.[1] The Subpoena commands the BBC

to designate a witness to testify on its behalf regarding four topics: "the authenticity" of the

Program and Outtakes (referred to in the Subpoena as the "Recordings"), the manner in which

they were copied to produce copies to Plaintiffs; the place and manner in which the Recordings

were stored, held and maintained, and the manner in which the BBC generally stored, held and

maintain these Recordings and other "similar in origin" during specific periods of time

(collectively, the "Topics"). Cain Decl. ¶4 and Ex. A.[2]

---

[1] A copy of the Program previously was provided to Robert Tolchin, counsel for Plaintiffs. Sommers Decl. ¶2 .

[2] It was not until this past Friday, July 22, 2011, that counsel for the BBC was advised that Plaintiffs were narrowing the Outtakes sought to the BBC's interviews with Ata Abu Rumaileh ("Rumaileh") and Zakaria Zubaidi ("Zubaidi"), two of the  interviewees shown in the Program, leaving counsel for the BBC insufficient time to reconfirm with the BBC whether confidential information is contained on these limited outtakes before having to make this timely motion. Even though discovery would not be over for a year and one-half, Plaintiffs refused the BBC's request for an extension of time to object or move against the Subpoena.  Sommers Decl. ¶10. Accordingly, the possibility of confidential, as well as non-confidential, information is included for the purposes of the privilege arguments that follow.

4

**Effects of Disclosure**

To the extent the Subpoena seeks information that is confidential, that confidential information was obtained from sources under agreements to keep the sources and some of the information they provided confidential. These agreements were specifically made as condition of newsgathering. These agreements of confidentiality were integral to the BBC's reporting for the news program. The compelled disclosure of these materials and information would force the revelation of these confidential sources and the confidential information supplied, as well as nonconfidential information which was not a part of the program. Mitchell Decl. ¶2.

Disclosure of any of the unpublished information from the Program, confidential or otherwise, would unduly hamper the BBC's ability to function in its independent editorial role. Among other things, were the BBC drawn into private disputes as a result of favorable or unfavorable coverage of persons and topics on which it reports, its impartiality among sources would be compromised. This would in turn impair the BBC's ability to report on important stories. Even non-confidential sources expect journalists to be independent chroniclers of events, not investigative functionaries for private litigants and the government. Mitchell Decl. ¶3.

This issue is of particular concern here where war reporting is involved.  Disclosure of the nature sought by Plaintiffs would jeopardize the security of BBC reporters who must cover stories in war zones or other areas of armed conflict, like the Middle East, and depend upon their neutrality for access and safe passage back to their bureaus.  Mitchell Decl. ¶4.

**Location of Potential Witnesses and Documents**

No potential BBC witness knowledgeable about the Topics listed in the Subpoena resides, works or regularly transacts business in person in New York and any witness with any such knowledge would have to travel more than 100 miles from his or her residence, place of employment or place where he or she regularly transacts business in person in order to comply

with the Subpoena. Mitchell Decl. ¶5;  Cain Decl. ¶¶ 5,7.

It may be the case, moreover, that the necessary knowledge does not reside in one person, but that more than one witness would be needed to respond to all the Topics. In that case, the Subpoena poses a double burden as it would also be extremely disruptive to the business of the BBC to have more than one (much less, one) of its employees distracted by compelled testimony in a foreign case in which the BBC is a stranger. In any event, the only individuals from the BBC with knowledge of the Topics in the Subpoena are based in the United Kingdom. Cain Decl. ¶¶ 6,7.

Likewise, no document responsive to the Subpoena is located in the United States. The requested documents are controlled by the BBC in the United Kingdom. Cain Decl. ¶8.

**Attempts to Resolve the Subpoena Without Motion Practice**

The efforts engaged in by counsel for the BBC to resolve the Subpoena with counsel for Plaintiffs are set forth in the accompanying Declaration of Louise Sommers, dated July 21, 2011, which is incorporated herein by reference. Sommers Decl. ¶¶ 5-10 and Ex. C.

**ARGUMENT**

**THE SUBPOENA SHOULD BE QUASHED**

**I.  THE SUBPOENA VIOLATES THE TERRITORIAL LIMITS OF RULE 45**

The authority to serve a subpoena under Rule 45 is expressly made "subject to the provisions of Rule 45(c)(3)(A)(ii).[3] That section provides that on timely motion, "the issuing court *must* quash or modify a subpoena" that

> requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed or regularly transacts

---

[3] Fed. R. Civ. P. 45(b)(2) provides:

(2) Service in the United States. *Subject to Rule 45(c)(3)(A)(ii),* a subpoena may be served at any place: (A) within the district of the issuing court.... [Listing other places][emphasis supplied].

6

business in person ...

(emphasis supplied).   This is the case here. Any witness for the BBC knowledgeable about the

subpoenaed issues would be required to travel more than 100 miles to testify in the Eastern

District. As there is no modification of the subpoena within the court's power that could cure this

violation, Rule 45 is mandatory that the Subpoena must be quashed.

The territorial restriction of Rule 45 was included "to protect [non-party] witnesses from

being subjected to excessive discovery burdens in litigation in which they have little or no

interest." In re Edelman, 295 F.3d 171, 178 (2d Cir. 2002). See also The Nissan Fire & Marine

Ins. Co., Ltd v. Fortress Re, Inc., No. 1:02CV00054, 2002 WL 1870084 at *3, 2002 U.S. Dist

Lexis 14928, at *9 (S.D.N.Y.  Aug 14, 2002).  Its "goal is to prevent inconvenience to the flesh-

and-blood human beings who are asked to testify, *not the legal entity for whom those human*

*beings work*." Price Waterhouse LLP v. First American Corp., 182 F.R.D. 56, 62 (S.D.N.Y.

1998)(emphasis supplied).

For this reason, it matters not whether the corporate deponent named and served,

particularly a nonparty like the BBC, is itself subject to jurisdiction in the issuing District, or

would be required under Fed. R. Civ. P. 30(b)(6) to produce either a knowledgeable or educated

witness in the district if it were a party to the underlying action. Cates v. LTV Aerospace Corp.,

480 F. 2d 620, 623-24 (5th Cir. 1973)("A person designated by an organization pursuant to Rule

30(b)(6) could not be required to travel outside the limits imposed by Rule 45(d)(2)");  Stanford

v. Kuwait Airlines Corp., No. 85 Civ. 0477, 1987 WL 26829, at *3, 1987 LEXIS 10981,  at *7

(S.D.N.Y. Nov. 25, 1987)(corporation in district not required to gather information for testimony

in district, rather "case law and logic dictate that the [territorial] proscriptions of [Rule 45] also

apply to individual employees who are the subject of a subpoena served upon a corporation.").

Rule 45's territorial restrictions trump Rule 30(b)(6) in this regard.  "Any contention that a

subpoena served pursuant to Rule 30(b)(6) need not comply with the requirements of Rule 45(c) would "fly in the face of the intent of Rule 45( [c] ) which is to 'protect nonparty witnesses from being inconvenienced by being compelled to travel inordinate distances to have their depositions taken.'" Price Waterhouse LLP v. First American Corp., supra, 182 F.R.D. at 62 (internal citation omitted).

If the witness knowledgeable about the matter for the corporation would be required to travel more than 100 miles from where he or she lives or works or "regularly transacts business in person" in order to comply and testify – regardless of whether the corporation is in the issuing District – the Subpoena should be quashed. See, e.g., Stanford v. Kuwait Airlines Corp., supra (court denied motion to compel deposition of corporation doing business in New York to produce as knowledgeable employees lived, worked or personally transacted business more than 100 miles away); Price Waterhouse LLP v. First American Corp., supra (court granted motion to quash subpoena on jurisdictionally present foreign company because witnesses with knowledge lived and worked more than 100 miles away). See also St. Paul Fire & Marine Ins. Co. v Royal Ins. Co., No. 91 Civ. 6151 1993 WL 267347, at *1-*2, 1993 LEXIS 9415, at *2 (S.D.N.Y. July 12, 1993)(subpoena quashed on corporate employee who would be required to travel more than 100 miles from home and work).

Here, the BBC was served at its news desk in Manhattan. However, it has no employee who is knowledgeable about the authenticity of the Program, the Outtakes, or the manner in which the Recordings and other BBC records were copied, stored or maintained during the time periods requested – in short, the matters Plaintiffs intend to elicit at deposition – in Manhattan, in the Eastern District, or indeed within 100 miles therefrom. The only individuals from the BBC with knowledge of the Topics in the Subpoena are based in the United Kingdom. Moreover, the BBC does not maintain in the United States any requested document that would be responsive to

the Subpoena; those are controlled from the U.K. Cain Decl. ¶¶5-8; Mitchell Decl. ¶5.[4] Given

that all potential witnesses and relevant documents are located outside the United States, it is not

dispositive that the BBC is subject to service here.  Stanford v. Kuwait Airlines Corp., supra;

Price Waterhouse LLP v. First American Corp., supra; Laker Airways Ltd. v. Pan Am. World

Airways, 607 F. Supp. 324, 326 (S.D.N.Y. 1985)(subpoena duces tecum on non-party witness

vacated where documents and records designated in it were regularly maintained within the

United Kingdom and not within the judicial district).

     Based on the circumstances present here, and the fact that the foreign-controlled

documents are requested only as an adjunct to the deposition, the Subpoena should be quashed in

its entirety.  There is no modification that could compel the BBC here. The Court lacks the

power to modify the Subpoena so as, for example, to change the location or to compel testimony

abroad. Price Waterhouse LLP v. First American Corp., supra, 182 F.R.D. at  63- 64 and n.7

(where knowledgeable corporate employees are outside the United States, court lacks the power

to modify the subpoena to change the location to a foreign city or to require witness to submit to

a deposition in a foreign country). Even so, international comity-based considerations counsel

that the Court refrain under circumstances involving foreign witnesses. See generally Ings v.

Ferguson, 282 F.2d 149, 152 (2d Cir.1960)( "Upon fundamental principles of international

comity, our courts dedicated to the enforcement of our laws should not take such action as may

cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention

of its procedures.").

---

[4] As well, the necessary knowledge may not reside in one person, but may require more than one person's
knowledge to respond to all the Topics. In that case, the Subpoena poses a double burden as it would also
be extremely disruptive to the business of the BBC to have more than one (much less, one) of its
employees distracted if the BBC were compelled to give  testimony in a foreign case to which the BBC is
a stranger. Cain Decl. ¶6.

Since the Subpoena violates the territorial limitations of Rule 45, it should be quashed.

## II.  THE SUBPOENA IS UNDULY BURDENSOME, WARRANTING QUASHING OR TRANSFER

The Subpoena is unduly burdensome. It represents an exercise in forum shopping that increases costs and burdens by involving two courts in the underlying case, rather than just the Southern District of New York – where the deposition could have been noticed and the Subpoena issued.  Had it, the most court most familiar with the case would determine the related issues raised here. Circumventing that result, the Subpoena should be quashed. Alternatively, it should be modified by transfer to the Southern District of New York.[5]

The underlying action is pending in the Southern District, where the subpoena was served on the BBC. Neither the BBC, nor the parties to the action, nor the underlying action itself has any relationship to the issuing Eastern District court. There is thus no basis for the Plaintiffs' counsel having issued the Subpoena from this District, except the arbitrary noticing of the deposition at his Brooklyn office. That same counsel, however, is prosecuting the underlying action in the neighboring Southern District, and could have noticed the deposition there.

Under these circumstances, forum shopping this Subpoena runs afoul of an underlying objective of Rule 45 to "protect[]…persons who are required to assist the court by giving information and evidence…." Fed. R. Civ. P. 45, Advisory Committee Notes, 1991 Amendment. It also disregards the larger principle governing Rule 45 and other Federal Rules, which requires that "they be construed and administered to secure the *just, speedy, and inexpensive determination* of every action." (emphasis added).  Fed. R. Civ. P. 1. Circumventing the underlying court as Plaintiffs have done here should not be permitted. See, e.g., Stanziale v

---

[5] Fed. R. Civ. P. 45(c)(3)(A)(iii) provides that "on timely motion, the issuing court must quash or modify a subpoena" that "subjects a person to undue burden."

Pepper Hamilton LLP, 2007 WL 473703 at *5, 2007 U.S. Dist. LEXIS, at *14 (S.D.N.Y. Feb. 9 2007)(finding that a party's failure to issue a subpoena from the court presiding over the underlying action violated Fed. R. Civ. P. 1 and the objectives of Rule 45).

Indeed, Judge George B. Daniels and Magistrate Judge Ronald L. Ellis, who are handling the underlying case, are most familiar with the issues and in the best position to evaluate the privilege, relevance and admissibility issues raised by this Subpoena and involved on this motion. See, e.g., Stanziale v Pepper Hamilton LLP, supra ("A judge who is fully familiar with the underlying litigation is in a better position to resolve [issues of waiver, privilege and cost sharing raised in motion to compel subpoena compliance] than a judge in a different district with no knowledge of the case."). Further, as issues of privilege are "bound up with issues about the relevance of the requested material," courts have held that underlying court should decide them. Id. See also Smithkline Beecham Corp. v. Synthon Pharm. Ltd, 210 F.R.D. 163, 169 n.7 (M.D.N.C. 2002)("The Court in which the litigation is pending will be in a better position to decide relevancy issues" where "relevancy of the subpoenaed material is a significant issue"). Otherwise, the Subpoena runs the risk of burdening two courts with the same case, thereby increasing the costs and burdens on the subpoenaed nonparty, the parties and the judiciary. Accordingly, the Subpoena is unduly burdensome in this District and should be quashed.

Alternatively, a transfer to the underlying case in the Southern District of New York is warranted. Plaintiffs, who are prosecuting the underlying case in that district, thus will not be prejudiced. As has been recognized, "a number of courts have either transferred disputes concerning nonparty subpoenas to the district possessing the underlying action or commented on the appropriateness of doing so." Stanziale v Pepper Hamilton LLP, 2007 WL 473703, at *1, 2007 U.S. Dist. LEXIS  11320, at *14 (S.D.N.Y. Feb. 9 2007)(motion to compel production pursuant to subpoena *sua sponte* transferred to the underlying case in another district where

issues including privilege involved).  See also Smithkline Beecham Corp. v. Synthon Pharm. Ltd, 210 F.R.D. 163, 169 n.7 (M.D.N.C. 2002)("When the information is sought by a subpoena, the third party has the right to request transfer of the dispute to the court in which the main litigation is pending for resolution."); U.S. v. Star Scientific, 205 F. Supp. 2d 482, 488 (D. Md. 2002)(transferring motion to compel nonparty to comply with subpoena to district in which the underlying action was pending, "which [was] in a better position to evaluate claims of confidentiality, undue burden and relevancy involved in this discovery dispute).

Accordingly, should the Court be unwilling to quash the Subpoena on this ground, it and this motion should be transferred to the Southern District of New York.

## III.  THE SUBPOENA SEEKS PROTECTED PRIVILEGED INFORMATION

Fed. R. Civ. P. 45(c)(3)(A)(iii) provides that "on timely motion, the issuing court must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies...." (emphasis supplied). As shown, that is the case here.

The Subpoena requires documents and testimony protected from disclosure by the journalist privilege. Those protections are granted by the New York Shield Law, N.Y. Civ. Rts. L. §79-h, the New York Constitution, the First Amendment and/or federal law in litigations premised on state or federal claims.[6]

Where evidence is sought for both federal and state claims, the Second Circuit has applied the federal privilege, recognizing however, that the applicable state law should be considered as well. von Bulow by Auersperg v. von Bulow, 811 F.2d 136 (2d Cir. 1987)("in

---

[6] Where subpoenaed information is sought for state claims, New York state law governs the privilege issue.  Fed. R. Evid. 501 ("in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness... shall be determined in accordance with State law"). See also In re NBC (Krase v. Graco Children Products, Inc.), 79 F.3d 346, 351, 24 Media L. Rep. 1599 (2d Cir. 1996) (New York state law governs reporters' privilege where production required in New York from broadcaster with office in New York).

examining the boundaries of the journalist's privilege, we may consider also...New York's so called "Shield Law...Although we are not bound to follow New York law, neither should we ignore New York's policy of giving protection to professional journalists"). Accordingly, should Plaintiffs establish that the BBC Outtakes they seek are relevant to both federal and state claims, the New York Shield Law will nevertheless remains applicable, alongside the federal privilege, to guide the Court. Under both set of privileges, the Outtakes are protected from compelled disclosure.

The Court of Appeals for the Second Circuit has recognized that "the pivotal function of reporters to collect information for public dissemination" and "the paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters" require protection of the ability of press and broadcasters to freely collect, edit and publish and broadcast news, unhampered by subpoenas seeking their newsgathering materials:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties... . Incentives would also arise for press entities to clean out files containing potentially valuable information... . And permitting litigants unrestricted, court-enforced access to journalistic sources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

Gonzales v. NBC, Inc., 194 F.3d 29, 35 (2d Cir. 1999).

The New York Court of Appeals agrees: "The autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes were routinely permitted. ...The practical burdens on time and resources, as well as the consequent diversion of journalistic effort and disruption of

newsgathering activity, would be particularly inimical to the vigor of a free press." O'Neill v. Oakgrove Construction, Inc., 71 N.Y.2d 521, 526-27, 523 N.E.2d 277, 279, 528 N.Y.S.2d 1, 3 (1988).

Whether in the form of testimony or documents, the information sought by the Subpoena was gathered in connection with a news program broadcast to the public.  The wholesale exposure of its unpublished information to litigant scrutiny for private purposes, regardless of how sympathetic those purposes might be, would indeed "burden the press with heavy costs of subpoena compliance" – including, as here, costs of safety and security of journalists in war zones – and "impair its ability to perform its duties."  As a broadcaster responsible for preparing and broadcasting news programming intended for the public, the BBC is entitled to avail itself of its journalistic protections to avoid these results. As shown below, Plaintiffs will be unable to overcome these protections.

Accordingly, disclosure of the subpoenaed information should not be compelled.  Instead, the Subpoena should be quashed in its entirety.

## A. Any BBC Outtakes Containing Confidential Information Are Absolutely Privileged From Disclosure Under New York's Shield Law

The New York Shield Law, NYCRL § 79-h, provides that a "newscaster" and his or her news organization, here, the BBC, are protected from compelled disclosure of  confidential news or "the source of any such news" received "in the course of gathering or obtaining news for publication or to be published in a newspaper...." NYCRL § 79-h(a)(6), (b), (f). [7] Thus, NYCRL §79-h(b) provides:

---

[7] NYCRL § 79-h(f) provides that the protections so granted "shall apply to ... organization having authority over the [professional journalist or newscaster]." NYCRL § 79-h(a)(8)  defines "news" as "written, oral, pictorial photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare."

(b) Exemption of professional journalists and newscasters from contempt: Absolute protection for confidential news. Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist or newscaster presently or having previously been employed or otherwise associated with any newspaper, magazine, news agency, press association, wire service, radio or television transmission station or network or other professional medium of communicating news or information to the public shall be adjudged in contempt by any court in connection with any civil or criminal proceeding,... <u>for refusing or failing to disclose any news obtained or received in confidence or the identity of the source of any such news coming into such person's possession in the course of gathering or obtaining news for publication or to be published in a newspaper</u>...[emphasis supplied]

This protection against compulsory disclosure provides "unqualified protection to a reporter's confidential sources and materials." <u>O'Neill v. Oakgrove Construction, Inc.</u>, 71 N.Y.2d at 524 n. 1, 523 N.E.2d at 278 n. 1, 528 N.Y.S.2d at 2 n. 1. <u>See Knight-Ridder Broadcasting, Inc. v. Greenberg</u>, 70 N.Y.2d 151, 518 N.Y.S.2d 595, 511 N.E.2d 1116 (1987).  It applies in civil and criminal cases, and provides a basis for quashing subpoenas issued in these matters. <u>Id.,  Matter of Beach v. Shanley</u>, 62 N.Y.2d 241, 251, 476 N.Y.S.2d 765, 771, 465 N.E.2d 304, 310 (1984) (Shield Law provides "broad protection...without any qualifying language").

Under this section, unpublished materials revealing confidential sources or information considered confidential "fall[] directly within the Shield Law's ambit of protection." <u>Sands v. News America Publishing Inc.</u>, 161 A.D.2d 30, 36, 560 N.Y.S.2d 416, 420 (1st Dep't 1990).  Once a journalist establishes an express or implied agreement of confidentiality in the course of gathering news for publication, the privilege attaches.  <u>See</u>, <u>e.g.</u>, <u>Davis v. Davis</u>, 88 Misc.2d 1, 6, 386 N.Y.S.2d 992, 994 (Fam. Cit. Rensselaer Co.1976).

Here, to the extent any subpoenaed Outtakes contain information obtained from sources under agreements to keep the sources and/or information confidential, the agreements were specifically made as a condition of newsgathering. Agreements of confidentiality were integral

to the BBC's reporting for the Program. The compelled disclosure of any such information would force the revelation of these confidential sources or confidential information supplied. Mitchell Decl. ¶2. Any Outtakes containing confidential information any precisely the type of "news" envisioned, and protected, by the statute.

The Program, presented as part of the BBC's news mission to prepare and disseminate information of public concern, focused on Arafat's isolation by Israel and the U.S. and his relationship to the Palestinian people and unquestionably concerned matters of profound worldwide interest. As such, any Outtakes containing confidential sources or information would be granted impenetrable protection from compelled disclosure pursuant to the instant Subpoena.

### B. New York's Shield Law Protects the BBC's Non-Confidential Outtakes and Testimony From Disclosure

Any subpoenaed outtakes deemed non-confidential and requested testimony concerning such unpublished information, also would be protected from compelled disclosure under the New York Shield Law.  Plaintiffs could not meet the burden of overcoming the qualified privilege that attaches to nonconfidential news under that statute.

NYCRL §79-h (c) allows compelled disclosure of nonconfidential news only a "last resort."  In re Subpoena Duces Tecum to American Broadcasting Companies, Inc., 189 Misc.2d 805, 808, 735 N.Y.S.2d 919, 921 (Sup. Ct. NY Co. 2001).  It provides a qualified privilege for nonconfidential news, but that qualification can only be overcome by a "clear and specific showing" by the party seeking disclosure – here, Plaintiffs – that the information sought "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source. ..." [8]

---

[8] NYCRL 79-h(c) provides in pertinent part:

The second prong of this test would further require Plaintiffs to show "that the claim for which the information is to be used 'virtually rises or falls with the admission or exclusion of the proffered evidence'." Flynn v. NYP Holdings Inc., 235 A.D.2d 907, 908, 652 N.Y.S.2d 833, 835 (3d Dept. 1997)(citing In re NBC (Krase v. Graco Children Products, Inc.), 79 F.3d 346, 351 (2d Cir. 1996)); In re Subpoena Duces Tecum to American Broadcasting Companies, Inc., supra, 189 Misc.2d at 808, 735 N.Y.S.2d at 922. That test is "not merely whether that the material be helpful or probative, but *whether or not the defense of the action may be presented without it*." In re Subpoena Duces Tecum to American Broadcasting Companies, Inc., supra, 189 Misc.2d at 808, 735 N.Y.S.2d at 922; Doe v. Cummings, No. 91-346, 1994 WL 315640 *1, 22 Media L. Rep. [BNA] 1510, 1511 (Sup. Ct. St. Lawrence Co. Jan. 18, 1994)(emphasis supplied).

Plaintiffs could not meet this tripartite burden here. The BBC is not a party to this case and has no personal knowledge of the facts underlying it. The Outtakes do not show or concern the attacks in issue, and indeed, contain only hearsay with respect to the underlying action. Plaintiffs could not establish that their success in prosecuting the underlying litigation "virtually rises or falls with the admission or exclusion of," and can not be presented without, those Outtakes.  In any event, Plaintiffs could not show clearly and specifically, as they must, that the BBC's unpublished information is a "last resort" after exhausting all other alternatives. Indeed,

---

(c) Exemption of professional journalists and newscasters from contempt: Qualified protection for nonconfidential news. Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist or newscaster presently or having previously been employed or otherwise associated with any newspaper, magazine, news agency, press association, wire service, radio or television transmission station or network or other professional medium of communicating news to the public shall be adjudged in contempt by any court in connection with any civil or criminal proceeding... for refusing or failing to disclose any unpublished news obtained or prepared by a journalist...in the course of gathering or obtaining news as provided in subdivision (b) of this section, or the source of any such news, where such news was not obtained or received in confidence, unless the party seeking such news has made a clear and specific showing that the news: (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source.....

on this last issue alone, there are other sources and alternatives to burdening the BBC.

     As a start, any information Plaintiffs seek regarding the PLO and PA Defendants in the underlying case can be obtained directly from knowledgeable, first-hand sources –Defendants themselves.   Yet Defendants have not been deposed in the underlying action. Indeed, no discovery except jurisdictional discovery has taken place yet. Sommers Decl ¶4 Ex. 4. Surely, Plaintiffs must look to parties in their own case before seeking to burden non-parties – particularly so where compelled discovery from BBC must be a "last resort."

     Instead, the attempt by Plaintiffs to compromise the BBC and its sensitive news gathering activities, and to disrupt its vital press functions, is precisely the conduct against which the Shield Law is intended to guard. O'Neill v. Oakgrove Construction, Inc., supra, 71 N.Y.2d at 527-29, 523 N.E.2d at 280-81, 528 N.Y.S.2d at 4-5; Matter of Beach v. Shanley, supra, 62 N.Y.2d at 249-50, 465 N.E.2d at 308, 476 N.Y.S.2d at 769. There is no question but that disclosure of any of the Outtakes sought would do just that, and unduly hamper the BBC's ability to function in its independent editorial role. Among other things, were the BBC drawn into private disputes as a result of favorable or unfavorable coverage of persons and topics on which it reports, its impartiality among sources would be compromised. This would in turn impair the BBC's ability to report on important stories. Even non-confidential sources expect journalists to be independent chroniclers of events, not investigative functionaries for private litigants and the government. Mitchell Decl. ¶3.

     Crucially, this issue has particular concern here, as war reporting is involved.  Disclosure of the nature sought by Plaintiffs would jeopardize the security of BBC reporters who must cover stories in war zones or other areas of armed conflict, like the Middle East, and depend upon their

neutrality for access and safe passage back to their bureaus.  Mitchell Decl. ¶4.[9]

These are precisely the type of reasons that journalist information is protected. The subpoenaed information would be protected from compelled disclosure by the New York Shield Law and the Subpoena should be quashed on this ground.

### C. The First Amendment and Federal Law Protects The BBC's Unpublished Information From Disclosure

As well, the non-broadcast outtakes and testimony sought is qualifiedly privileged from compelled disclosure under federal law. Gonzales v. NBC, Inc., 194 F.3d at 35; Krase v. Graco Children Prods., Inc. (In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.), 79 F.3d at 351 (subpoena seeking outtakes quashed);  U.S. v. Grant, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176, at *9 (S.D.N.Y. Nov. 17, 2004)(subpoena for video outtakes of program shown on MTV quashed);  Carter v. City of New York, No. 02 Civ. 8755, 2004 WL 193142, at *2, 2004 U.S. Dist. LEXIS 1308, at *5 (S.D.N.Y. Feb. 2, 2004)(subpoena for deposition testimony of reporter quashed). "Whether a reporter should be required to turn over a videotape of an event or be deposed as to his direct perceptions of that event would appear to raise the identical policy issues that the court in Gonzales relied upon in finding that the qualified privilege for journalists extended to nonconfidential information." Id.

Although the federal privilege against compelled disclosure of non-broadcast news-related information is qualified, "Gonzales makes clear that requiring the press to surrender

---

[9] The New York Court of Appeals has recognized that the free press guarantees of the N.Y. State Constitution Article I, Section 8 "independently mandates the protection afforded by the qualified privilege to prevent undue diversion of journalistic effort and disruption of press functions." O'Neill v. Oakgrove Construction, Inc., supra, 71 N.Y.2d at 528, 523 N.E.2d at 280, 528 N.Y.S.2d at 4.  Indeed, the "protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment." O'Neill v. Oakgrove Construction, Inc., supra, 71 N.Y.2d at 529 n.3, 523 N.E.2d at 281 n.3, 528 N.Y.S.2d at 5 n.3.  At a minimum then, for the reasons that Plaintiffs will be unable to satisfy their burden under NYCRL §79-h(c), they cannot meet their burden under the State Constitution.

materials gathered in the course of doing its job is not to be done lightly." U.S. v. Grant, 2004 U.S. Dist. LEXIS 28176 at *8-*9. A litigant "will not be granted unfettered access to 'sift through [journalists'] files in search of information supporting [his] claims,' because such access would undermine the public's perception of the press as an independent institution and foster the view,' as the Second Circuit noted, 'that it is 'an investigative arm of the judicial system, the government, or private parties.' " Sikelianos v. City of New York (In re Subpoena Directed to the AP), No. 05 Civ. 7673, 2008 WL 2465120, at *1, 2008 U.S. Dist. LEXIS 47560, at *5-6 (S.D.N.Y. June 18, 2008) (citations omitted).

The burden of overcoming privilege rests squarely on the party seeking disclosure. Gonzales v. NBC, supra, 194 F.3d at 36; von Bulow by Auersperg v. von Bulow, supra, 811 F.2d at 141.  Where confidential information is involved, disclosure shall not be compelled absent a "clear and specific showing" by that party that the information sought is (1) "highly material and relevant," (2) "necessary or critical to the maintenance of the claim," and (3) "not obtainable from other available sources." McGraw-Hill, Inc. v Arizona (In re Petroleum Prods. Antitrust Litig.), 680 F.2d 5, 7 (2d Cir. 1982). The second prong of this test also requires the party seeking disclosure to show that the claim for which the confidential information is to be used "virtually rises or falls with the admission or exclusion of the proffered evidence." Krase v. Graco Children Prods., Inc., 79 F.3d at 351 (citations and quotation omitted); Persky v. Yeshiva Univ., No. 01 Civ. 5278, 2002 WL 31769704 at *3, 2002 U.S. Dist. LEXIS 23740 at *9-*10 (S.D.N.Y. Dec. 10, 2002)(articulates "stringent test" under Gonzales v. NBC that must be applied to overcome the qualified reporter's privilege.)

Where non-confidential material is involved, disclosure shall not be compelled unless the party seeking disclosure establishes that the information sought is (1) "of likely relevance to a significant issue in the case" and (2) "not reasonably obtainable from other available sources."

Gonzales v. National Broadcasting Co., 194 F.3d at 36. This showing should be balanced against the public interest in a free press, with disclosure compelled only where that public interest is outweighed.  U.S. v. Grant, 2004 U.S. Dist. LEXIS 28176, *1, 6 (S.D.N.Y. 2004).

### Neither Federal Test Can Be Satisfied Here

As indicated above, the BBC, a stranger to the underlying suit, has no personal knowledge to impart that could assist the case.  Whatever information and documents the BBC acquired in the course of preparing and gathering news for the Program is neither relevant nor material to that case, nor could any confidential information be critical to it. Again, all of it would be incompetent hearsay *vis-à-vis* the underlying case.

For the reasons that Plaintiffs cannot satisfy the nonconfidential standard of the N.Y. Shield Law, Plaintiffs will be unable to satisfy the identical test for confidential information under the federal reporter's privilege articulated in Gonzales v. NBC, Inc., supra.

Nor can Plaintiffs satisfy the less rigorous "likely relevance" test under Gonzales to obtain the nonconfidential material sought, even were it of limited relevance.  "Limited relevance" to a case is simply not "likely relevance" sufficient to satisfy the test for disclosure of nonconfidential materials.  In Gonzales, the issue in the underlying action was whether a deputy sheriff engaged in a practice of stopping and detaining motorists without probable cause or reasonable suspicion. The outtakes sought included a videotaped stop of a network employee by the same deputy sheriff. As the Court in U.S. v. Grant noted in refusing to order disclosure of the videotape sought there, "in Gonzales, and in other cases in which the journalists' privilege was overcome, the video *contained* images of the tortious conduct or crime itself." 2004 U.S. Dist. LEXIS 28176 at *7. (emphasis supplied).

Here, however, as in U.S. v. Grant, there is no contention that the acts of terror in issue in the underlying case appear in the Outtakes sought.  They do not. And the testimony sought is

even more attenuated.  To the extent Plaintiffs seek testimony regarding the BBC's storage and maintenance of the Outtakes, as well as its practices concerning the company's storage and maintenance of recordings of other unrelated programs, there is virtually no relevance whatsoever to this case.

Nor is there any indication that the information contained in the Outakes sought is unavailable from alternative sources.  To the contrary,  any information related to the Defendants in the underlying case can be obtained directly from them, yet they have yet to be deposed. Surely, Plaintiffs must attempt to obtain what they need from the parties to their case before burdening journalist nonparties. <u>Carter v. City of New York</u>, 2004 WL 193142, at *1, 2004 U.S. Dist. LEXIS 1308, at *4 (quashing subpoena under <u>Gonzales</u> test where defendant did not show that the information sought was "not reasonably obtainable from other sources").

Plaintiffs are simply on a fishing expedition to try to determine if the BBC has anything that could possibly aid their cause. Such "unfettered access" to "sift through" the materials sought is precisely what the privilege was intended to guard against. <u>Sikelianos v. City of New York (In re Subpoena Directed to the AP)</u>, <u>supra</u>. Indeed, compelling the testimony and documents sought here would risk placing the BBC in precisely the situation of burden and jeopardy that state and federal protections granted a newscaster was intended to avoid. <u>Gonzales v. NBC, Inc.</u>, <u>supra</u>..

### Policy Considerations Also Outweigh Compulsion Here

Moreover, the likely relevance of the nonconfidential material sought and its availability from alternative sources must be balanced against the public interest in a free press.  Where the latter is not outweighed, disclosure will not be compelled. <u>See</u>, <u>e.g.</u>,  <u>U.S. v. Grant</u>, 2004 U.S. Dist. LEXIS 28176 at *6 ("Applying the Gonzales standard to this case, in which the prosecution seeks nonconfidential information from a non-party newsgatherer, requires balancing the likely

relevance of the material sought and its availability from alternative sources against the public interest in a free press"; disclosure not compelled).

Compelling the BBC to provide the outtakes and testimony ordered would not only negate the precise concerns for press freedom (a "paramount public interest" in the "maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters" unhampered by subpoenas") that the Court of Appeals for the Second Circuit hoped to promote.  Gonzales v. NBC, Inc., supra.194 F. 3d at 35.  It also would jeopardize the "autonomy" of the press" by "litigants seeking to utilize the newsgathering efforts of journalists for their private purposes," – a result that the state appellate courts sought to avoid. O'Neill v. Oakgrove Construction, Inc., supra, 71 N.Y.2d at 526-27, 523 N.E.2d at 279, 528 N.Y.S.2d at 3.

It bears repeating that the risk to journalists on dangerous assignments – a concern that permeates this motion – is not an abstract one. The Committee to Protect Journalists has identified 868 journalists killed on assignment globally since 1992, of which 34 percent were covering wars. See Committee to Protect Journalists, http://cpj.org/killed/ (last visited July 25, 2011). By reporting in the West Bank and Gaza on the Palestinian-Israeli conflict, the BBC correspondent was courting significant risk to his safety. Mitchell Decl ¶4.   Apparent from the broadcast is that he was attempting to obtain from militants, officials and others sensitive, controversial information provocative to both governments and individuals. To properly serve in this role, journalists who cover such international conflicts have a particular need for the judicial protection afforded them from litigation subpoenas from civil litigants, such as Plaintiffs, who, driven by unfortunate and horrific experiences, are seeking to exploit highly risky newsgathering efforts for personal purposes, however sympathetic they may be. The result may be that war zone correspondents – whose reporting is crucial to the public interest – may be left with fewer

forthcoming sources and exposed to significantly more danger than other types of journalists, if courts stripped them of this protection, and they were viewed, as the Second Circuit feared in Gonzales v. NBC, supra, "as an investigative arm of the judicial system, the government, or private parties."  [10]

Plaintiffs' need for the BBC outtakes and testimony for use in this private litigation cannot outweigh the broader concerns implicated here. The consequent undermining of the effectiveness of a free press in obtaining the type of vital and sensitive news reported in BBC's Program is far too heavy a price to pay for compelled disclosure in a private civil matter. The Subpoena on the BBC should be quashed.

## IV.  THE SUBPOENAED INFORMATION CONTAINS INADMISSIBLE HEARSAY THAT SHOULD NOT BE COMPELLED

It is settled that compelled disclosure will not be ordered if the information sought would not be admissible in the action.  See e.g., U.S. v. Harwood, 998 F.2d 91, 97-98 (2d Cir. 1993)(statements to reporter inadmissible hearsay and subpoena to reporter quashed); Concerned Citizens v. Belle Haven Club, No. 3:99 Civ 1467, 2004 U.S. Dist. LEXIS 27335, at *6-7 (D. Conn. June 21, 2004)(subpoena seeking journalist's deposition testimony as to the accuracy of magazine article statements was quashed as they were inadmissible hearsay; the plaintiffs failed to show that the source was authorized to speak for the defendant or on the topics under Fed. R. Evid. 801(d)(2)(C), or that the topics were matters within the scope of his authority under Fed. R.

---

[10]  This was also the conclusion reached in a recent war tribunal prosecution in The Hague, the International Criminal Tribunal for the Former Yugoslavia. "In war zones, accurate information is often difficult to obtain and may be difficult to distribute or disseminate as well. The transmission of that information is essential to keeping the international public informed about matters of life and death." Prosecutor v Brdjanin, Case No.: IT-99-36-AR73.9, Decision on Interlocutory Appeal at ¶36 (Dec. 11, 2002)(during prosecution of former Bosnian Serb official, tribunal refused to compel testimony from former Washington Post reporter who had interviewed official) .Sommers Decl ¶11 and Ex. D. In order to bring this information to the public, "[w]ar correspondents must be perceived as independent observers rather than as potential witnesses for the Prosecution. Otherwise, they may face more frequent and grievous threats to their safety and to the safety of their sources." Id. at ¶42.

Evid. 801(d)(2)(D)).  This is the situation here.

Statements made to the BBC in both the Program and any Outtakes would be incompetent hearsay in the underlying action. As Judge Sack recognized in his dissenting opinion in <u>N.Y. Times Co. v. Gonzales</u>, 459 F.3d 160, 182-183 (2d Cir. 2006)(Sack, CJ, dissenting):

> [L]ittle of what reporters learn is obtained first hand. Most is, in a broad sense, told to them by others. Most is, therefore, "hearsay" when published. When the government seeks information in a reporter's possession, there is almost always someone other than the reporter and somewhere other than the newsroom from whom or from which to obtain it. Under the qualified privilege, a lawyer -- for the government or another party -- engaged in litigation of any sort who thinks he or she needs information in a journalist's possession, usually can, and then, under the qualified privilege, therefore must, obtain it elsewhere.

Such hearsay should not be compelled.

## CONCLUSION

For the foregoing reasons, the Motion to Quash the Subpoena for testimony and documents addressed to the BBC should be granted in its entirety.  Alternatively, this motion should be transferred to the Southern District of New York for consideration and decision.


Dated:   New York, New York          MILLER KORZENIK SOMMERS LLP
         July 25, 2011

By _____
         Louise Sommers
         David S. Korzenik
         Itai Maytal
488 Madison Avenue Suite 1120
New York, New York 10022-5702
212-752-9200
Attorneys for The British Broadcasting Corporation

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                             ) ss.:
                             )
COUNTY OF NEW YORK )

HORTENSA THOMPSON being duly sworn, deposes and says:

1.     I am not a party to this action, am over the age of 18 years and reside in New Windsor, New York;

2.     On July 25, 2011, I served the within: Memorandum of Law of the British Corporation in Support of Motion to Quash Subpoena by placing a true copy thereof in properly addressed, securely sealed, postpaid wrapper and by mailing them via regular first class mail by depositing the same in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, upon the following:

Robert J. Tolchin, Esq.
Berkman Law Office, LLC
111 Livingston Street, Suite 1928
Brooklyn, NY 11201
*Attorneys for Plaintiffs*

Dated: July 25, 2011
       New York, NY

                                                    
_____
                                      Hortensa Thompson

Sworn to before me this
25th day of July, 2011

_____
Notary Public

LOUISE SOMMERS
Notary Public, State of New York
No. 02SO5049532
Qualified in New York County
Commission Expires September 18, 2009